E-FILED
Friday, 30 June, 2017 06:17:02 PM
Clerk, U.S. District Court, ILCD

AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Central District of Illinois



| | | |
|---|---|---|
| United States of America<br>v.<br><br>BRENDT A. CHRISTENSEN<br><br>*Defendant(s)* | )<br>)<br>)<br>)<br>)<br>)<br>) | Case No.<br>17-MJ- 7132 |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __June 9, 2017__ in the county of __Champaign__ in the __Central__ District of __Illinois__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1201 | Kidnapping, in that he unlawfully and willfully seized, confined, inveigled, decoyed, kidnapped, abducted, carried away, and otherwise held the victim, and in committing and in furtherance of the commission of the offense used a means, facility, and instrumentality of interstate and foreign commerce. |

This criminal complaint is based on these facts:

See attached affidavit of FBI Special Agent Anthony Manganaro, which is attached hereto and specifically incorporated herein by reference.

☑ Continued on the attached sheet.

s/ Anthony Manganaro

*Complainant's signature*

Anthony Manganaro, FBI Special Agent

*Printed name and title*

Sworn to before me and signed in my presence.

s/ Eric I. Long

*Judge's signature*

Date: 06/30/2017

City and state: Urbana, Illinois

Eric I. Long, United States Magistrate Judge

*Printed name and title*

# AFFIDAVIT

I, Anthony Manganaro, being first duly sworn on oath, depose and state as follows:

## INTRODUCTION

1. I am a Special Agent with the Department of Justice (DOJ), Federal Bureau of Investigation (FBI), currently assigned to the Champaign, Illinois, Resident Agency of the Springfield, Illinois, FBI Field Office, with prior assignment in the Laredo, Texas, Resident Agency of the San Antonio, Texas, FBI Field Office. I have been so employed with the FBI since August 2010. Prior to employment with the FBI, I was employed with the Tulsa Police Department from July 2004 through July 2010. Through my prior employment with the Tulsa Police Department and my current tenure with the FBI and as part of my daily duties as a Special Agent, I investigate criminal violations relating to child exploitation, violent incident crime, kidnapping, public corruption, and fraud. I have received training in these areas, and have had the opportunity to investigate and assist other agents in these investigations, to include having been the affiant on numerous search warrants, arrest warrants, and criminal complaints.

2. I am an investigative and law enforcement officer of the United States, who is empowered by law to conduct investigations of and to make arrests for the offense of kidnapping in violation of Title 18, United States Code, Section 1201. As an FBI Special Agent, I am authorized to execute warrants issued under the authority of the United States.

1

3. The statements contained in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, law enforcement officers, and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested arrest warrant and does not set forth all of my knowledge about this matter. If called as a witness to testify, I would testify as follows.

4. This affidavit is made in support of an arrest warrant and criminal complaint charging BRENDT CHRISTENSEN (D.O.B. 6/30/1989) (hereinafter referred to as "CHRISTENSEN") with kidnapping in violation of Title 18, United States Code, Section 1201.

## RELEVANT STATUTE

5. The federal kidnapping statute found at 18 U.S.C. § 1201 reads, in relevant part:

> (a) Whoever unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise any person, ... when –
>
> > (1) ... the offender ... uses ... any means, facility, or instrumentality of interstate or foreign commerce in committing or in furtherance of the commission of the offense;
> > ...
>
> shall be punished by imprisonment for any term of years or for life and, if the death of any person results, shall be punished by death or life imprisonment.

## PROBABLE CAUSE

6.      Y.Z., a Chinese National female, is an International Scholar at the University of Illinois (hereinafter "UI") and focused her research in the areas of photosynthesis and crop productivity. Y.Z. arrived at UI in April to May 2017.

7.      On Friday, June 9, 2017, at approximately 8:30 a.m. Central Standard Time (CST), Y.Z. went to UI's Turner Hall[1] where she conducts research. Between 12:30 p.m. and 1:00 p.m., Y.Z. returned to her apartment for lunch. At approximately 1:39 p.m., Y.Z. sent a text message from her cellular phone to a manager of a different apartment complex in Urbana, Illinois, where she intended to sign a lease. Y.Z. indicated in the text message to the apartment manager that she was running behind[2]. Through the subsequent text messages between Y.Z. and the apartment manager, Y.Z. communicated that she would be approximately 10 minutes late, with an anticipated arrival at 2:10 p.m.

8.      At 1:35 p.m., Y.Z. was observed on video boarding the Champaign-Urbana Mass Transit District (MTD) Teal Line bus at the Orchard Downs South Shelter[3]. At 1:52 p.m., Y.Z. was observed on video exiting an MTD bus at the

---

[1] University of Illinois Turner Hall is located at 1102 S. Goodwin Avenue, Urbana, Illinois.

[2] Law enforcement personnel made contact with the apartment manager who allowed law enforcement to review the manager's communications with Y.Z. As a result, law enforcement personnel observed the text conversation between Y.Z. and the apartment manager.

[3] MTD's Orchard Downs South Shelter bus stop is located near the intersection of S. Orchard Street and W. George Huff Drive, Urbana, Illinois.

3

intersection of W. Springfield Avenue and N. Mathews Avenue, Urbana, Illinois. At 1:56 p.m., Y.Z. was observed on video attempting to flag down an MTD bus. The MTD bus continued past Y.Z. without stopping[4].

9. At 1:57 p.m., Y.Z. was observed on video[5] walking northbound on N. Goodwin Avenue to the intersection of W. Clark Street and N. Goodwin Avenue, Urbana, Illinois, where she stood under a shade tree on the southeast corner. Y.Z. remained in this location at a designated MTD bus stop.

10. At 2:00 p.m., a black Saturn Astra (hereinafter "SUBJECT VEHICLE"), driven by an initially unknown person, later identified as CHRISTENSEN, was observed on video driving east on W. University Avenue. SUBJECT VEHICLE turned south on N. Goodwin Avenue. At the intersection where Y.Z. was located, SUBJECT VEHICLE turned east on W. Clark Street. SUBJECT VEHICLE was next observed traveling westbound on W. Main Street, and turning northbound on N. Goodwin Avenue. In sum, SUBJECT VEHICLE appears to have passed Y.Z. at the bus stop and circled the block back to her location. At 2:03 p.m., SUBJECT VEHICLE's speed slowed and the SUBJECT VEHICLE pulled over next to where Y.Z. was standing. Y.Z. was observed speaking with the driver of the SUBJECT VEHICLE through the passenger window for approximately one minute. At 2:04 p.m., Y.Z. entered the front passenger

---

[4] The MTD bus was the Limited Line bus and likely continued by Y.Z. because Y.Z. was located on the incorrect side of the street to board the bus.

[5] University of Illinois has video cameras on buildings/structures on campus that captured video of Y.Z.'s activity at various times on June 9, 2017.

side of the SUBJECT VEHICLE. The SUBJECT VEHICLE pulled away from the side of the street and proceeded northbound on N. Goodwin Avenue. The SUBJECT VEHICLE was observed on video continuing northbound on N. Goodwin Avenue through W. University Avenue.

11. At approximately 2:38 p.m., the apartment manager sent a text message to Y.Z. and received no response.

12. At approximately 9:24 p.m., a UI Associate Professor (hereinafter referred to as "AP") reported to the UI Police Department (hereinafter "UIPD") that Y.Z. was missing. An officer met with AP and several of Y.Z.'s colleagues, who advised they had not been able to contact Y.Z. for several hours. Y.Z. had previously informed the AP and her colleagues that she would be signing a lease at an area apartment complex and would return shortly thereafter. When Y.Z. did not return, multiple phone calls were placed to her cell phone, all of which went unanswered. The AP met with UIPD at Y.Z.'s apartment. UIPD searched the apartment, which was secured and vacant.

13. Based on review of the video footage of the SUBJECT VEHICLE by law enforcement, the SUBJECT VEHICLE was determined to be a Saturn Astra, a means, facility, and instrumentality of Interstate Commerce, which was sold in the United States during 2008 and 2009. The SUBJECT VEHICLE was manufactured outside the State of Illinois, and was used in committing and in furtherance of the commission of this offense.

14. On June 12, 2017, UIPD and other personnel searched the Illinois Secretary of State databases for vehicles that matched the SUBJECT VEHICLE's description and

had been registered in Illinois. The results indicated 18 four door Saturn Astra vehicles were registered in Champaign County. Law enforcement personnel conducted additional public database checks reducing the list further. Law enforcement personnel conducted interviews regarding the remaining list of vehicles.

15. While following these leads, on June 12, 2017, at approximately 8:10 p.m., law enforcement personnel went to 2503 W. Springfield Avenue, Champaign, Illinois, where they observed a 2008 black Saturn Astra in the apartment complex lot bearing Illinois license plate tag "P399495." The vehicle had a large sunroof. Based on Illinois Secretary of State database checks, CHRISTENSEN was a registered owner of the SUBJECT VEHICLE. CHRISTENSEN was interviewed and questioned on his whereabouts on June 9, 2017, between 2:00 p.m. and 3:00 p.m. CHRISTENSEN could not initially recall his whereabouts. He later advised, however, he must have been either sleeping or he was playing video games at his residence all day on June 9, 2017. CHRISTENSEN stated that the black Saturn Astra in the parking lot, the SUBJECT VEHICLE, belonged to him. CHRISTENSEN provided consent to law enforcement personnel to search the SUBJECT VEHICLE. Law enforcement officers conducted a brief search of the vehicle, but did not locate or remove any items from the vehicle.

16. On June 14, 2017, additional review of video footage indicated that the SUBJECT VEHICLE had a sunroof and a cracked front passenger hubcap. As a result, law enforcement returned to 2503 W. Springfield Avenue, Champaign, Illinois, and observed the Saturn Astra belonging to CHRISTENSEN has a cracked hubcap on the front passenger side of the vehicle that appeared to match the video footage. Based on

the aforementioned information, I believe that the SUBJECT VEHICLE is the 2008 black Saturn Astra registered to and belonging to CHRISTENSEN.

17. On June 14, 2017, authorization was sought and obtained in the U.S. District Court for the Central District of Illinois to search the SUBJECT VEHICLE for items believed to be on Y.Z.'s person at the time of her disappearance, including items of trace evidence.

18. On June 15, 2017, law enforcement officers from the FBI and the UIPD executed a search warrant on CHRISTENSEN's vehicle located at 2503 W. Springfield Avenue, Champaign, IL. Prior to searching the SUBJECT VEHICLE, law enforcement officers knocked on the door of the apartment located at the aforementioned address. CHRISTENSEN answered the door and allowed law enforcement officers inside the residence. An additional occupant of the same apartment was also present at the residence. Once inside, law enforcement officers asked if CHRISTENSEN would consent to an interview at the FBI Champaign office. The SUBJECT VEHICLE was towed to a secure bay located at the Champaign Police Department.

19. On June 15, 2017, CHRISTENSEN consented to an interview at the Champaign FBI office. CHRISTENSEN was provided his advice of rights and signed the accompanying form, indicating a willingness to answer questions. During the subsequent interview, CHRISTENSEN admitted to driving around the UI campus when he observed an Asian female with a backpack standing at a corner appearing distressed. CHRISTENSEN claimed that he drove up to the Asian female, who relayed she was late to an appointment. CHRISTENSEN stated that he offered the Asian female a ride. The

female entered his vehicle and attempted to show CHRISTENSEN where she needed to go through her cellular telephone map application. CHRISTENSEN claimed that he believed he made a wrong turn, because the female became panicked, at which point CHRISTENSEN claimed that he let her out of the vehicle in a residential area a few blocks away from where he picked her up.

20. Concurrent to this interview, agents spoke with the other occupant of the residence, who provided written consent for the search and seizure of items from the residence. Numerous electronic items were collected, including several computers and a cellular telephone belonging to CHRISTENSEN (hereinafter referred to as "SUBJECT PHONE"), all of which are means, facilities, and instrumentalities of Interstate Commerce.

21. On June 15, 2017, agents sought and obtained a federal search warrant in the U.S. District Court for the Central District of Illinois for the SUBJECT PHONE.

22. Pursuant to the search warrant, a forensic examination was conducted on the SUBJECT PHONE. The forensic examination of the SUBJECT PHONE indicated, in part, that on or about April 19, 2017, the user of the SUBJECT PHONE visited a forum on the website FetLife entitled "Abduction 101," to include sub-threads "Perfect abduction fantasy" and "planning a kidnapping." This phone, a means, facility, and instrumentality of Interstate Commerce, was therefore used in committing and in furtherance of the commission of this offense.

23. On June 15, 2017, the FBI searched the SUBJECT VEHICLE pursuant to a search warrant issued by the U.S. District Court for the Central District of Illinois. On

June 18, 2017, the SUBJECT VEHICLE was transported to the FBI Springfield Division main office at 900 E. Linton Avenue, Springfield, Illinois 62703.

24. I know, based on conversations with FBI agents familiar with the search of the SUBJECT VEHICLE, that the front passenger door of the SUBJECT VEHICLE where Y.Z. would have been sitting appeared to have been cleaned to a more diligent extent than the other vehicle doors. Based on my training and experience, I believe that this type of action may be indicative of an attempt to conceal or destroy evidence.

25. Beginning on or about June 16, 2017, law enforcement conducted continuous surveillance on CHRISTENSEN and monitored his activities.

26. On June 29, 2017, CHRISTENSEN was captured on audio recording while under law enforcement surveillance explaining how he kidnapped Y.Z. CHRISTENSEN stated that he brought Y.Z. back to his apartment, and otherwise held her in his apartment against her will. As of June 30, 2017, Y.Z. remains missing. Based on this, and other facts uncovered during the investigation of this matter, law enforcement does not believe Y.Z. is still alive.

FURTHER AFFIANT SAYETH NOT.

s/ Anthony Manganaro

Special Agent Anthony M. Manganaro
Federal Bureau of Investigation
Champaign, Illinois

Subscribed and sworn to before me this 30th day of June 2017.
s/ Eric I. Long

Eric Long
US Magistrate Judge

ERIC I. LONG
United States Magistrate Judge